Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Helen Jante *v.* Olivetti Corporation of America, Appellant.

Argued June 10, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR. and BLATT, sitting as a panel of three.

*James F. Carl*, with him *Metzger, Wickersham, Knauss & Erb*, for appellant.

*Richard A. Jameson*, with him *Jameson, Connelly, Martsolf & Guida*, and *James N. Diefenderfer*, for appellees.

OPINION BY JUDGE CRUMLISH, JR., October 1, 1976:

The Olivetti Corporation of America (Olivetti) has appealed a decision and order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision granting benefits to Helen Jante (Claimant). Finding no error in the proceedings below, we must affirm.

Claimant was employed by Olivetti as a typewriter inspector. On June 27, 1970, while in the course of her employment, Claimant suffered an accidental injury when she picked up a defective typewriter from the assembly line and placed it on the floor. Having received prompt notification of the injury, Olivetti's plant nurse assisted Claimant in filling out the forms for benefits and assured her that her claim would be duly processed.

In September, 1970, Claimant began receiving monthly payments from Olivetti's non-occupational sickness and accident insurance carrier (Aetna Life and Casualty Co.) for what she assumed were workmen's compensation benefits. These payments continued until December 17, 1973. In fact, unknown to Claimant, Olivetti's workmen's compensation carrier (Travelers Insurance Co.) had rejected the compensation claim in August, 1970. On January 7, 1974, Claimant filed a document entitled Petition to Review Provisions of Existing Compensation Agreement, but later amended it to become a compensation claim petition.

The referee found as a fact that Claimant's accidental injury was due to "the unusual strenuous exertion of her duties on that particular day." The referee found that Claimant suffers a 50% functional disability as a result of her accidental injury and is therefore totally disabled. As to the timing of Claimant's claim petition, the referee found that Claimant had been lulled into a false sense of security when Olivetti's nurse provided forms for Claimant and helped her to complete them. This being so, the referee held that the statute of limitations did not bar the claim petition and awarded benefits for total disability.

Since the alleged accident occurred prior to the 1972 Amendments to The Pennsylvania Workmen's Compensation Act[1] (Act), Claimant was required to relate her disability to an "accident" within the scope of her employment in accordance with Section 301(c) of the Act, 77 P.S. §411. The judicial definition of the term "accident" as used in the Act includes a concept known as the "unusual strain" doctrine. Under this doctrine, a claimant has suffered a compensable "accident" when he or she suffers an "unusual exer-

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §1 et seq.

tion in the course of work causing an unexpected and sudden injury." *Puher v. United States Steel Corp.,* 18 Pa. Commonwealth Ct. 278, 335 A.2d 854 (1975); *Hinkle v. H. J. Heinz Co.,* 7 Pa. Commonwealth Ct. 216, 298 A.2d 632 (1972). To prove a compensable accident under this definition, a claimant must establish that the injury was the result of unusual physical effort exerted to meet an unusual situation and that, considering the individual work history of the employe, the effort was not normally connected with his or her work. *Puher v. United States Steel Corp., supra.* The injury must be related to a claimant's performance of work of a different nature requiring greater exertion, risk or hazard than that to which he or she is normally exposed. *R. M. Kerner Co. v. Workmen's Compensation Appeal Board,* 18 Pa. Commonwealth Ct. 282, 335 A.2d 534 (1975).

The record tells us that on the day of Claimant's accident there was an unusually high number of defective typewriters which Claimant had to remove from the assembly line. Normally, this requires Claimant to place the typewriters in metal shelves located nearby her work station. There are repairmen on the other side of these shelves who then repair the defects. However, due to the unusually high number of defects that day, there was no room on the metal shelves for additional defective typewriters. Hence, Claimant was required to stoop and place the defective typewriters on the floor. Considering these unusual facts, we find ample support for the referee's conclusion that Claimant sustained a compensable "accident" under the "unusual strain" doctrine.

Next, Olivetti contends that its non-occupational sickness and accident insurance carrier (Aetna Life and Casualty Co.) be given the right of subrogation for payments which it made to Claimant or, in the alternative, that Olivetti and its compensation carrier

(Travelers Insurance Co.) be given credit on future installments of compensation for what has already been paid. In support of this contention, Olivetti cites Section 319 of the Act, 77 P.S. §671, which states in part:

"Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board."

This Court has applied the foregoing section to grant an employer's subrogation claim on behalf of its sickness and accident insurance carrier where the record contained evidence to support the subrogation interest. *See United States Steel Corp. v. Workmen's Compensation Appeal Board,* 10 Pa. Commonwealth Ct. 67, 308 A.2d 200 (1973). In this case, there is no evidence of record that a subrogation agreement existed between the parties. Further, in *United States Steel,* the employer had asserted its claim both in its answer to the compensation petition and on appeal. In this case, although there was testimony that the payments were made by Aetna and not by Olivetti's compensation carrier, the subrogation claim has been raised for the first time in the appeal to this Court and Aetna has not joined in these proceedings to assert its right of subrogation. *See General Tire and Rubber Co. v. Workmen's Compensation Appeal Board,* 16 Pa. Commonwealth Ct. 473, 332 A.2d 867 (1975). We hold that Section 319 of the Act

is not applicable and we must therefore reject Appellant's contention that Aetna is subrogated to Claimant's right to receive compensation payments from Travelers.

Finally, Appellant claims that it should be given credit against the compensation award for payments made to Claimant by Aetna. In support of its contention, Appellant cites *General v. E. Roseman Co.*, 21 Pa. Commonwealth Ct. 72, 343 A.2d 683 (1975). In *General*, the employer had paid the claimant $7,000.00 after a settlement negotiated when the employer filed a termination petition. The claimant had been receiving benefits for total disability for 5 1/2 years prior to this settlement. On claimant's petition for reinstatement, the employer interposed the lump sum payment as a defense. We held that the employer was entitled to the offset and rejected claimant's contention that since the agreement was invalid under the Act, the lump sum payment made pursuant thereto could not be credited to the employer. In so holding, we stressed that claimant did not have the right to a double recovery. In *Temple v. Pennsylvania Department of Highways*, 445 Pa. 539, 285 A.2d 137 (1971), a claimant was paid for his accrued sick leave wages after he sustained a disabling accident. After an ultimate determination that the accident was compensable, the insurance carrier claimed credit for the period after the accident for which the claimant had received his sick pay. The Supreme Court, noting that the payments made to claimant were actually wages to which the employe was entitled under the employment contract, denied the credit. This fact was held to distinguish *Temple* from a prior Superior Court case, *Creighton v. Continental Roll and Steel Foundry Co.*, 155 Pa. Superior Ct. 165, 38 A.2d 337 (1944). In *Creighton*, the payments made to the injured claimant by the employer were not in the

nature of wages but, rather, were payments in lieu of compensation. They were paid voluntarily by the employer merely in consideration of the claimant's long service with the company. In *Creighton*, the employer was allowed the credit for the payments against its ultimate workmen's compensation liability. In *Temple*, the employer was not allowed credit. The critical distinction pointed out by the Supreme Court in *Temple* is that sick leave is something to which an employe would have been entitled regardless of whether or not he had been injured and that it was repugnant to the intent of The Workmen's Compensation Act to require an employe to expend benefits to which he would be entitled even if his absence was due to a non-compensable sickness when he was absent due to a disability which was covered by the Act.

This case is more analogous to *Creighton* than to *Temple* since the benefits received by Claimant would not have been available absent the injury. Therefore, Claimant was not required to deplete benefits for her compensable injury which could have been used for other purposes.

Accordingly, Appellant-employer is entitled to a credit against its liability for workmen's compensation for the benefits paid to Claimant by its non-occupational sickness and accident insurance carrier.

We therefore

### Order

And Now, this 1st day of October, 1976, judgment is entered in favor of Helen Jante and against Olivetti Corporation of America and Travelers Insurance Company, for total disability at the rate of $60.00 per week from July 1, 1970, to March 26, 1971, a period of 38 2/7 weeks, in the amount of $2,297.14, and from March 27, 1971, to May 14, 1973, a period of 111 2/7 weeks,

in the amount of $6,677.14, and from July 3, 1973, and continuing into the future until such time as the disability ceases or changes in extent or character.

Interest is payable at the rate of six (6) per centum per annum on compensation benefits not yet paid.

IT IS FURTHER ORDERED that the case is remanded to the Workmen's Compensation Appeal Board for a determination of the total amount of benefits paid to Helen Jante by Aetna Life and Casualty Company, which amount shall be credited against the amounts owed by Olivetti Corporation of America and Travelers Insurance Company under the aforesaid judgment.

Judge KRAMER did not participate in the decision in this case.