Erie Insurance Exchange, Petitioner *v.* William J. Sheppard, Commissioner, Insurance Department of The Commonwealth of Pennsylvania, Respondent.

Argued September 13, 1978, before President Judge Bowman and Judges Crumlish, Jr., Mencer, Rogers, Blatt, DiSalle and Craig. Judges Wilkinson, Jr. and MacPhail did not participate.

Irving Murphy, with him David E. Holland, and MacDonald, Illig, Jones & Britton, for appellant.

Barbara Anne Brown, Assistant Attorney General, for appellee.

OPINION BY JUDGE ROGERS, December 4, 1978:

Erie Insurance Exchange (Erie) has appealed from an order of the Insurance Commissioner requiring it to stop its practice of subtracting the amount of sick leave paid to a government employe by his employer from the employe's loss benefits established and required to be paid by the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq. (Act).

The facts of the case are undisputed. Erie is a reciprocal exchange authorized to write automobile insurance in the Commonwealth. In calculating the no-fault loss benefits owed to claimants employed by any government, Erie deducted sick leave benefits received by or available to these claimants from their employers. This practice, it says, is authorized by Section 206(a) of the Act, 40 P.S. §1009.206(a), which provides as follows:

Except as provided in section 108(a)(3) of this act, all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act and except those medicare benefits to which a person's entitlement depends upon use of his so-called 'lifetime reserve' of benefit days) workmen's compensation, any State-required temporary, non-

*occupational disability insurance, and all other benefits* (except the proceeds of life insurance) *received by or available to an individual because of the injury from any government,* unless the law authorizing or providing for such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss. (Emphasis added.)

Erie says that sick pay paid to government employes is a benefit received "from any government."

The Commonwealth's Insurance Department, believing Erie's practice to be unlawful, charged it with violation of Sections 5(a)(7)(ii) and 5(a)(10)(vi) of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, 40 P.S. §§1171.5(a)(7)(ii), 1171.5(a)-(10)(vi). After a hearing, the Insurance Commissioner found Erie blameless of offending Section 5(a)-(10)(vi) making it an unfair claim settlement practice not to settle claims fairly, because he concluded that Erie was sincere in its belief that its practice was authorized by the statute. The Insurance Commissioner concluded, however, that Erie had violated Section 5(a)(7)(ii). That provision prohibits insurers from unfairly discriminating between individuals of the same class and essentially the same hazard in the amount of premium charged or in benefits payable. In order to understand the Insurance Commissioner's conclusion in this regard, it is necessary to advert to Section 203 of the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. §1009.203. This provision gives the owner or operator of a motor vehicle an election to provide security in partial substitution for loss benefits under no-fault through other means, including sick pay. It further requires, where such security is elected by the insured to be applied in sub-

stitution for no-fault benefits, that the insured's premiums for no-fault insurance should be reduced. The Insurance Commissioner pointed out that Erie's interpretation of the phrase "benefits . . . received by or available to an individual . . . from any government" as including sick pay discriminated against government employees who, although they did not elect to have their sick pay deducted from their no-fault loss and therefore received no reduction in no-fault premium nevertheless had their no-fault benefits reduced by the amount of their sick pay. Erie does not dispute that this was a result of its interpretation and its practice based thereon, nor does it dispute that persons in private employment who did not make the election to substitute sick pay for no-fault benefits have received from it the full amount of their no-fault benefit without reduction on account of sick pay. The Insurance Commissioner ordered Erie to discontinue deducting sick pay from the claims of government employees who had not elected that sick pay be deducted from their no-fault benefits. He also ordered Erie to make restitution to government employees whose no-fault claims had been settled in accordance with Erie's interpretation. Erie has appealed. We affirm the Commissioner's order.

Section 206 provides pertinently that benefits received from social security (except medicare benefits received on account of lifetime reserve benefit days), workmen's compensation, State-required temporary, nonoccupational disability insurance, and all other benefits from any government are to be substracted from no-fault loss. Social Security, workmen's compensation and State-required disability insurance are specific; "all other benefits . . . from any government" is general. The Statutory Construction Act of 1972, 1 Pa. C.S. §1903(b) requires that "[g]eneral words shall

be construed to take their meanings and be restricted by preceding words." The phrase "all other benefits . . . from any government" must take its meaning and be restricted by social security, workmen's compensation and State-required temporary, nonoccupational disability insurance; that is, benefits from any government, in order to be included at all must be benefits like social security, workmen's compensation and State-required temporary, nonoccupational insurance. Sick pay is not like social security, workmen's compensation and the State-required insurance program referred to. First, social security, workmen's compensation and State-required temporary, nonoccupational disability insurance are instituted by government in its role of *parens patriae* for the relief of working people in general. Sick pay provided by the government to its own employees grows out of the relationship of government as employer and worker as employee. In paying sick pay to its employees the government acts not as *parens patriae* providing for the distress of workers generally, as it does in establishing social security and workmen's compensation; it acts rather as an employer partially compensating its employees in this fashion for their services. The distinction is recognized in cases in the workmen's compensation field quite analogous to the matter at hand, where it has been held that sick pay, like vacation pay, is an entitlement of workers for services performed and as such may not be applied as a credit against the employer's liability for workmen's compensation. *Temple v. Pennsylvania Department of Highways,* 445 Pa. 539, 285 A.2d 137 (1971); *Workmen's Compensation Appeal Board v. Olivetti Corp. of America,* 26 Pa. Commonwealth Ct. 464, 364 A.2d 735 (1976).

Further, sick pay is exhaustible and in this regard closely resembles medicare benefits to which a per-

son's entitlement depends upon the use of his lifetime reserves of benefit days, which Section 206 expressly provides shall not be deducted from no-fault loss. The General Assembly's exclusion of this exhaustible social security benefit from social security benefits otherwise deducted strongly suggests that it did not intend that such similar sick pay arrangements made by government for its employees should be deducted.

We believe that the Insurance Commissioner's interpretation of the provision in question is required also in order to avoid the unreasonable result which follows from Erie's interpretation. Erie says that it must deduct sick pay benefits from government workers yet may not reduce premiums on this account unless the insured makes the election provided by Section 203. Hence, a government employee who has not made the election pays full premium but gets less benefits than the worker in the private sector identically situated.

Finally, Erie's interpretation creates two classes of no-fault policy holders; those employed by government whose sick leave benefits must invariably be deducted from their claims and those in the employ of others whose sick leave benefits are not to be deducted in the absence of election. Without deciding the issue, we are unable readily to discern a rational relationship between this classification and a legitimate legislative objective. By familiar principles, we are impelled to construe the statute in a fashion tending to make it conform to constitutional requirements.

In conclusion, we hold that Section 206(a) of the Pennsylvania No-fault Motor Vehicle Insurance Act does not require the substraction of sick pay paid by governments to their employees from loss in calculating net loss.

Order affirmed.

ORDER

AND NOW, this 4th day of December, 1978, the order of the Insurance Commissioner dated July 25, 1977 is hereby affirmed.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. The words to be interpreted in Section 206(a) of the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. §1009.206(a), are the following: "all other benefits . . . received by or available to an individual because of the injury from any government . . . shall be subtracted from loss in calculating net loss." The majority modifies this clear and explicit language by excluding from "all other benefits" the item of sick pay. It does so under the claim of determining legislative intent.

Even though a court may be convinced that the legislature intended to enact something different from that which it did, if the language of the statute, as here, is clear and unambiguous, the statute must be given its plain and obvious meaning. *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 213 A.2d 277 (1965).

Likewise, the word "all" is a most comprehensive adjective referring to other benefits and is surely diminished by a result that assigns to it a meaning of "all, except sick pay."

The majority concludes that there is something unfair for a government employee, contrasted with a private employee, who receives sick pay, not to be reimbursed for his lost income twice. He receives full payment from the government for the days lost due to his injury in an automobile accident but does not collect a second time from his no-fault insurer.

If such a result is undesirable, unfair, or unrealistic, then the arguments made here to correct such a result should be addressed to the legislature who has, so far as I can understand, clearly and explicitly stated that all benefits received from the government "because of the injury" are to be deducted in calculating net loss.

I would hold the words "all other benefits", as used in Section 206(a), to be all inclusive and reverse the Commissioner's ruling in this case.